Orange County. We'll hear from Mr. Morgan. Good morning judges and I appreciate the opportunity to be here before you via Zoom and I agree with Judge Jones it is a bit awkward. I represent the appellants the estate of Rosa Bonilla through her mother and her children and this is a review of a summary judgment grant by Judge Crone, Trial Judge Crone. I'd like to stress that if you read my brief and also Ms. Ponce's brief the parties do not disagree as to the controlling legal standards. I think the issue before this court is the sufficiency of the evidence and I respectfully submit that there is overwhelming evidence here that requires a jury or should require a jury's case. Prior to this oral argument the Fifth Circuit sent us notice that we should be prepared to discuss the Sanchez versus the Young County case and certainly at the time that we wrote our briefs this decision had not been decided by the Fifth Circuit. I'd like to start my presentation with that case specifically because I believe if you look at that case involving the suicide of the Robert Montano case you have the same basic problems unconstitutional conditions which led to the suicide of my client Rosa Bonilla specifically in Sanchez versus Young Diana Simpson who had attempted suicide earlier was presented to the jail and the jail relied on her verbal responses to their questions regarding her condition and stopped all screening at that point. The Fifth Circuit points out that that jail would not consult medical personnel unless and until she was sober so the jail took the position that she answered verbally fine as in Rosa Bonilla and therefore they stopped all screening at that point to wait until she sobered up and of course she died. In this case the undisputed evidence is that Shafer correctional officer Shafer and she put this in her incident report testified repeatedly that she relied on Rosa Bonilla's answers to her question about whether Miss Bonilla intended self-harm. Now the problem in this case is in the screening forms and in the documents Rosa Bonilla disclosed four psychiatric diagnoses post-traumatic stress disorder from being molested or raped as an 11-year-old child current depression due to the death of her friend attention deficit hyperactivity disorder and bipolar 2 disorder. In addition to those four conditions Rosa Bonilla also disclosed that she was high or I think the term is stoned on marijuana using marijuana that day. She was abusing Xanax that day she had a prescription for Xanax Welbutrin and Trazodone all three of those are depressing medications and psychoactive psychotropic drugs. Judge Crone took judicial notice of the publications I submitted in my summary judgment opposition that these drugs either singly or in combination have been known to create or increase suicidal thoughts. So what we have in this case is an abundance of information that my client had red flags that was confirmed by the testimony of Dimitri Gonzalez who's also a correctional officer. Now the county relies heavily on a finding by the Texas Commission of Jail Standards I'm looking at it now April 11, 2017. This is a significant document because what the Texas Commission on Jail Standards finds after its investigation is there appears to be no violation of minimum standards. So what they looked for was minimum standards only there's no indication that they look for or can consider constitutional standards. Additionally in the same document dated April 11, 2017 they stated that quote the suicide screening form was completed and there were disputes my interpretation of the c-file but I believe it's abundantly clear and that's the correctional facilities operations plan of Orange County. I apologize I used the acronym without stating it first that when there is known psychiatric conditions you have to consult with medical personnel at the jail. Well as in the death of Robert Montano which the Fifth Personnel doctor doctors at the jail and that condition remained in place and unchanged for Rosa Bonilla and as this court pointed out in the case involving Diana Simpson the failure of the jail to take remedial action when they are noticed or when they are aware of constitutional deficiency constitutes acquiescence in the unconstitutional condition. That's what the Fifth Circuit held and it cited another case in that decision. Now if I'm going to switch at this point to there are two types of claims here an unconstitutional condition of confinement and also an episodic act or omissions claim. Before of course we reach those the fundamental inquiry is did the county breach its duty constitutional duty to a detainee who has much greater constitutional rights than a prisoner to provide one medical care and two protection from self-harm. If we look at the medical care issue the county according to Sheriff Merritt who is a policymaker has 72 hours or beyond or no time limit and that's a direct quote to verify prescriptions no time limits. This policy unofficial policy exists even though defense counsel included with their summary judgment evidence a memorandum to the jail stating that Orange County shall give prescribed medication. I believe it's actually phrased in the negative Orange County shall not deny prescription medication to an inmate or a detainee. So they have a written policy but yet according to the sheriff they don't enforce it and also if you look at licensed vocational nurse Schaefer who was a defendant the timeline demonstrated and in her deposition that she had two hours of time from 4 p.m to 6 p.m to attempt to verify Rosa Bonilla's prescriptions and then lead to the giving of prescription medication. I thought the record just two quick record points on this I thought I thought the record did show they were attempting to verify and it got to Dickerson and then there was a shift change but I didn't see that it that the attempts to verify were sort of put off forever it was efforts and the related fact question I have is is her prescription in the record for whatever medication she needs? No your honor it's not she brought bottles with her okay but I mean so she did not bring a sheet but is did you is do we know in fact with any certainty that she needed should she had a prescription? She claimed that she did and the policy is to verify what the record cites and I can give you your honor pages from the deposition and line Dickerson first of all Dickerson was the person responsible for verification not correctional officer Schaefer because Dickerson was the LVN so it was her responsibility to attempt to verify or verify the testimony that she gave us on page 31 of her deposition and page 32 was that she received the prescription list at 4 p.m again it's called a prescription list and that's the information provided by the detainee and she knew that these prescriptions according to our client came from Walgreens so from 4 p.m to 6 p.m she stated that she didn't have time to make the call and verify them and she left it to the next LVN who I believe was Thompson but it's also undisputed that she didn't put anything on it like this is a rush urgent this woman was intoxicated with Xanax abuse we need to know yes judge I have a couple of factual questions um please number one do we have the arrest report as to the circumstances of her arrest for illegal possession of Xanax evidently is that in the record it was produced but it's not part of I thought that was Xanax I don't believe it was Xanax the truth is judge I would check on that during my time and try to give you an answer I do not believe it was Xanax but I can certainly find out all right also what do we uh evidence is there about the circumstances of this um of this uh visit from her boyfriend which ended in yelling and shouting number one and number two uh doesn't isn't it significantly factually different from Sanchez and Montano that this woman sat in the booking area for over an hour and was uh visibly uh uh present and conversing in a very normal way apparently with um the booking uh I guess was uh Dickerson and maybe Schaefer not Schaefer but the you know the booking people yes your honor and I understand the question certainly with Robert Montano he was never in that condition to be able to converse intelligently from the time they brought him in to the time he unfortunately died in the infirmary but with Diana Simpson respectfully she was also able to converse casually such that the that is not true that is not true I am intimately familiar with the record of the Sanchez case she came in she was woozy she was able to fill out part of the uh of the intake form denied had denied suicidal ideation multiple times and then they put her in the back and they never talked to her again until she died so that is a distinction well I apologize judge I'm sorry I was focusing on the record yeah I was focusing on the page three where they said they relied on her verbal answers so I assumed incorrectly that she must have been coherent at the time she gave those verbal answers but you're right I did make an assumption beyond the text but I do find it respectfully significant that it's still a reliance upon a verbal answer now but but there what I mean like Judge Jones I was on the second version of Sanchez in that case the testimony really was that they had this sleep off policy so they they take the responses and then they're not going to fill out the rest their own independent observations but here unless you can point me to someplace in the record that's different officer Schaefer really quite clearly did have a holistic approach she did make her own independent observations do you disagree with that no however in her incident report which I cited part of my summary judgment record and as an exhibit she stated that she ultimately relied on Bonilla's oral response that she did not intend self-harm why it's unreasonable because she knew or at least Rosa Bonilla told her that she had been smoking marijuana and was abusing Xanax at the time that of her arrest and therefore she was under those influences at the time of book it but what are they supposed to do I'm sorry what I mean obviously they still should listen to the detainee yes it's just it can't be the exclusive but it doesn't seem like in this record it was but it's still a relevant data point isn't it yes it is your honor I don't deny that it I don't deny that it is relevant what I'm respectfully suggesting is the objective information disclosed required consultation with medical super personnel and also Demetri Gonzalez correctional officer discussed that with these red flags and that's a term he used or agreed with when I asked him they should have considered suicide watch or suicide proof betting those are things that was professor I'm sorry I apologize I'm that's why we give you five minutes wasn't Gonzalez your expert no my expert was Richard Keekbush and in my 15 seconds his testimony was not objected to and I believe it satisfies even a rule 703 analysis under the thank you my time is up I've enjoyed it well you have time for rebuttal so just hang on miss yes judge miss uh right up on c and yeah thank you your turn thank you your honor may it please the court my name is Carmen Jo Raida Poncey counsel for Appalese Orange County of Texas corrections officer Jennifer Shafer and nurse Tiffany Dickerson I would like to start off today by acknowledging the sad circumstances underlying this case suicide is always tragic but it is not always preventable unfortunately and although it is understandable that Bonilla's family would like to cast blame for her suicide the district court here was correct when it found that there was no constitutional violations committed by any of the county defendants as this court recently noted in the first Sanchez versus Young County case quote the county however cannot be held responsible for fatal decisions the inmate made that were under all circumstances not obvious to government employees that is the situation we have here this case boils down to one basic principle a history of mental illness and or substance abuse does not automatically equate to a risk of suicide plaintiff's contention to the contrary is not supported by the facts of this case or the controlling case law of the circuit and I will agree with my colleague Mr. Morgan that the parties are not really disputing the controlling law here but more the facts as they apply to the controlling law the main issue before this court today is whether or not the district court correctly ruled that the plaintiffs did not present a genuine issue of material fact on qualified immunity or their three claims which just to briefly highlight for this court is a conditions of confinement claim an episodic action omission claim and monel liability we ask this court to affirm the district court's grant of summary judgment because the record below has conclusively established three main points the first neither officer shaffer nor nurse dickerson had any and last the two de facto policies that are alleged by the plaintiffs in this matter are only supported by mischaracterizations and misrepresentations of the summary judgment evidence because this matter requires a fact-intensive analysis  before reaching the conditions of confinement claim in the sanchez case that the court provided to us i would just like to briefly highlight four key facts that i believe are relevant to all of the claims before the court the first is that officer shaffer was trained and licensed by the texas commission on law enforcement to conduct inmate screenings the second as your honor higginson had pointed out officer shaffer conducted a thorough and multi-faceted screening of bonia that took into consideration the totality of circumstances that were in front of her and just to briefly highlight those circumstances the first being information from the arresting officer that he did not believe bonia was intoxicated and he did not to engage in an in-depth and plain language conversation with bonia about her responses on the screening form and that screening form your honor it's important to note that it's prescribed by the texas commission on jail standards so this is the state required form that the jail is using as part of those discussions officer shaffer and bonia discussed her bipolar history and her substance abuse history next officer shaffer relied on her own observations of bonia not just during the intake but also during a strip search and for a full hour following the intake she noted from her observations that bonia did not act intoxicated she did not act depressed and she did not display any signs of unusual behavior or self-harm she also relied on her interactions with bonia which she described as calm and positive and noted that bonia was making plans for the future notably she was making plans to bond out of jail that day or the next day and last and in accordance with the jail policy officer shaffer consulted with her supervisor about bonia screening and about the demeanor that she observed in her interactions with bonia before deciding to place her in the holding cell a third key fact for your honors to consider is that there is no evidence in the record at all that bonia had a valid prescription for xanax and judge jones i know you asked earlier relating to whether or not she was arrested for the possession of xanax and she was that arrest report is included in the record at page 1580 to 1582 there is also no evidence at all in the record that bonia experienced any withdrawal symptoms during her 10-hour incarceration in the orange county jail without your honors i will proceed next to the condition of confinement claim and specifically discussed the sanchez versus young county case that you all had presented to us you'd said four key factors the fourth was the withdrawal symptom one yes your honor i'm judge higginson pardon me oh i'm sorry i can't count sorry that's your right your honors i i welcome questions if you have any before i proceed yes i was wrong no it's just you you answered my question the fourth factor was the withdrawals okay thank you your honor i find that the sanchez case is very instructive for our matter here sanchez illustrates the factual circumstances that need to be present in order to support a conditions of confinement claim it's important here because when you compare sanchez to what we have here they are different in every material aspect there is nothing about miss simpson's arrest and intake in sanchez that is similar to bonia here for example simpson was arrested for public intoxication the arresting officer knew that miss simpson had ingested 24 pills and beer here bonia was arrested for the possession of a controlled substance specifically xanax and the arresting officer reported that he did not believe she was intoxicated miss simpson on one hand was not diagnosed as i can see from the case law with any kind of mental health disorder here bonia was reportedly bipolar miss simpson did have a history of suicide attempts one as recently as a few weeks prior to her arrest here there's no evidence in the record that bonia had ever attempted suicide before additionally at the scene of her arrest the officers found her so incoherent and couldn't keep her eyes open she was unsteady on her feet that they called ems to the scene because they were worried she needed medical attention and miss simpson to the medic admitted that she was trying to kill herself actually that's not accurate but anyway again i read the record i apologize your honor i i had thought that in the first few pages she had admitted killing trying to kill herself to the ems medic i apologize if i'm incorrect nonetheless there on the scene ems was called to provide treatment to her here in this matter the arresting officer didn't believe that miss bonia needed any kind of medical attention which is evident by the fact that he did not call ems or he did not take her to the hospital prior to taking her to jail which is an option that he had with miss simpson another notable fact is that her husband called the jail twice not just once but twice to inform them he believed she was suicidal here there's no reports from any of member bonia's families or friends raising a concern over suicide sorry risk of suicide in fact miss bonia had an in-person visit with her significant other the day that she was incarcerated after that visit her significant other did not raise any concern with the jail about miss bonia's physical health her mental health or any concern that he believed she was at risk for suicide it's also important to note that the intake process for miss simpson was not completed specifically that tcjs mandated screening form was not completed and the ccq search was not completed we do not have that issue here the record is very clear and i believe it's undisputed that the intake process was performed another important distinguishing factor is that in sanchez there was questions about whether or not miss simpson was timely observed by the corrections officers during her stay there was conflicting information between the testimony and the records in that case here there is absolutely no question that miss bonia was timely observed by the corrections officers every 30 minutes or less that is confirmed by officer testimony by the observation logs and by jail video another important instructive fact to gain from sanchez is the types of evidence that were available in the summary judgment record to establish the de facto policy that there was a de facto policy of placing intoxicated inmates in an observation cell until they detoxed or essentially sobered up the court was able to establish the existence of that de facto policy with three types of evidence the first was a history of reported violation by the texas commission on jail standards there was reports for five years which showed similar violations of not completing the screening form and not properly monitoring inmates the second was that when the texas commission on jail standards investigated miss simpson's death they found those same violations existed the third there was uniform testimony among the corrections officers that it was the policy of young county to place intoxicated inmates in the observation cell none of those three types of evidence are available in this case there is no information in the record that orange county had a history of violations reported by the texas commission on jail standards no violations relating to the adequacy of the screening form i'm sorry the adequacy of the intake process or violations related to the provision of inmate prescriptions second when the texas commission on jail standards investigated miss bonia's suicide although they found and i agree with mr morgan that there were some red flags in the screening form you can't ignore their final conclusion that there was no violations of the state jail standards and third there is no uniform testimony here or really any testimony at all that it is the policy or the common practice of orange county to either rely solely on inmate statements about their suicide risk or to deny or unreasonably delay the provision of prescription medication mr morgan throughout the briefing below and the briefing here also likes to point to the montano case montano is very similar to sanchez in that there was a uniform testimony among the corrections officers about the de facto policy that was alleged there but the only similarities between this case and montano are the words orange county texas other than that those cases are so factually distinct that the court below twice found that that case was inapplicable to this matter your honors i will next move on to the episodic acts and omissions claim raised by the plaintiffs um and unless your honors have any questions on the conditions of confinement claim or the sanchez case i have one question a larger perspective itself orange county texas as i recall is not one of our more populous counties do you recall offhand what the approximate population of the entire county is your honor i don't have that information offhand but you are correct that it is a rural county give me some sense of the size of this jail the jail has a standard population size of under 200 people i believe that's what it can hold normally on average i believe there's testimony in the 80 inmates or at least certainly below 200 okay and that would be at at full capacity which it is not always at full capacity your honor do we know how many inmates were there at the time of this incident i don't believe that information is in the record your honor okay regarding the deliberate indifference claim there is no evidence in the record to first support the prong of subjective knowledge i will start with officer shaffer i think it's very clear that her conduct with bonia and her assessment based on the totality of circumstances presented to her and as she testified repeatedly did not lead her to believe that miss bonia was a risk of suicide much less a substantial risk and again she based that on the information she received from the arresting officer she based that on her own observations her interactions with bonia and her consultation with her supervisor about the screening form and miss bonia's demeanor and behavior officer shaffer beyond that continued to interact with bonia during her 10-hour incarceration when she timely completed the 30-minute observations and took miss bonia to the visitation with her significant other none of those interactions led her to believe that her assessment was incorrect in the first place or needed to be changed based on new information let me ask you a question um i i recall reading in the briefs that that ended that uh visit ended up in yelling and screaming did is there any testimony about what that might have been about yes your honor it is in officer shaffer's written incident report which was cited in our brief and also in our summary judgment motion i don't believe it went as far as to say it was yelling and screening but that miss bonia came out of that uh slightly agitated uh there is audio of that conversation although i do not believe it was in the summary judgment record but the testimony um shows that her and her significant other discussed bonding out the next day they discussed specific bondsmen and the bond amount for her that needed to be secured to obtain her release the next day or that day your honors officer shaffer did herself admit that bonia was a little agitated as they were coming back out of that visitation i i cannot imagine and i do not mean to speak for the group but uh i can't believe that anyone comes out of a conversation with their significant other telling them to do something probably slightly agitated that's not an uncommon experience but even is to make bond that is not in the record below uh during the conversation he did say that he was going to work and contact the bondsman mr goodman that they had specifically discussed during their conversation so there was no reason for her to be upset or believe that she was not actually going to be bonded out the next day and certainly none that was known to officer shaffer apparently she had a record had she been uh in this jail before with these confronting these officers she had been previously incarcerated but her most recent incarceration was in november 2012 so at least five years prior so i do not believe that she had any interaction with officer shaffer i do not believe that she had any interactions before with nurse dickerson but i do not know that for certain your honor okay just in the little bit of time you have left could you mention the shift change problem that dickerson had and how that affected the verification yes your honor so once nurse dickerson receives all of the medical forms from the intake process she goes through them to identify what are the next steps that need to be taken so here she noticed that based on some yes responses on the screening form that she needed to make the state required notifications to the magistrate judge and the local mental health authority she made those next she noticed that miss bonia reported three different prescriptions and those needed to be verified so what she did was sent a request to the local mental health asking for miss bonia's medical history and her prescription history and then she went about to try and identify the facility which ultimately ended up to be walgreens she did not know that at the time of what she could use to verify those prescriptions although she was able to send out to the request to the local mental health authority she wasn't didn't receive a response and was not able to contact walgreens and i see that my time is complete now your honor yes ma'am thank you very much uh mr morgan rebuttal you're on mute start again i know i'm i'm sorry i got i got it now i apologize i'm not very good with technology a couple questions i would like to answer for the court that the court raised the population of orange county is right below 84 000 and i concur with defense council that the maximum capacity is approximately 200 inmates i know that i asked a question how many were there i believe it was like 126 but i'm telling you i don't remember that specifically i think the city of orange is about 18 000 city of orange i believe judge i'd have to check but i believe that's it's a little bit bigger than that i thought it was around 24 000 but i could be mistaken i know the county is right below 84 000 it's been flooded a lot it has my heart goes out to those people it's really terrible terrible situation for um a couple things i'd like to point out and i can give record sites i was doing that work while defense council was speaking sheriff merit testified page 25 and 26 of his deposition which by extrapolation i believe is record on appeal 2074-2075 that there is no time limit for verifying prescription that respectfully amounts to the effective denial of prescription medication because there's just no it's a lax daysicle there's also yes judge that there's a critical feature to this denial of medication and that is a fact issue on causation what evidence do you have that if the prescription had been verified and if she had gotten whatever medications these were xanax or wellbutrin or whatever that she would not have killed herself do you have evidence about that your honor i believe there'd be no way to obtain that type of evidence because she committed suicide however i did put into the record uh in publications that judge crone took judicial notice of under rule 201 that there are depressive if not suicidal ideations as a result of these medications and interactions also the correctional officers dimitrio gonzalez and even schaefer realized that there could be withdrawal symptoms and these could be very problematic especially if someone has a psychiatric history i also believe the issue of causation can be we can't we can't say for sure that she that she wouldn't have killed herself but i believe we can say that there are constitutional violations that were a moving force in ultimately leading to the injury and we can rely upon dimitrio gonzalez's testimony where he says if an inmate answers yes and provides information of psychiatric or psychological history quote it is like a red flag you know so yes he said those those inmates or detainees should be put on suicide status and that's in roa 2074 i believe that's correct page 20 of his deposition he also talked about how and this is significant uh that the intake officers correctional officers do not receive training on the effects of multiple medications or drug reactions drug interactions excuse me i misspoke or and also they have no training on the texas jail standards this is in his deposition page 35 and page 42 i believe but my math is correct that would be on roa 2288 and 2296 ultimately what dimitrio gonzalez testified to and he has the highest ranking correctional officer is that her profile alone should have put her on suicide status and that's on page 46 roa 2300 he testified even if she denied an attempt to commit suicide he still she still would have been should have been on correct on suicide status and that's also the testimony of dr t push yes your honor now i have another question about causation here because apparently the county says that even if she were on suicide watch well maybe they'd have had to give her a different blanket that's certainly the case but um they would have only observed her every 30 minutes so what is your evidence of causation about inadequate um you say that their refusal to put her on suicide watch caused uh the death amount of time can i answer your question briefly okay because suicide watch requires suicide proof bedding there would have been no sheet to wrap around that's the most important thing all righty okay one quick amount of questions yes yes the amount of xanax that she was in possession of when arrested do we know that i looked at the incident report it doesn't it does make here i'll make a reference to it in a second it just says yellow pills i don't think it gives an amount that she had a clear plastic baggie with yellow pills that were discovered to be xanax of course on the first page it also talks about synthetic narcotic which i believe was synthetic marijuana any other questions no sir um thank you both uh thank you well argued case very challenging and uh thank you very much thank you very much i appreciate this very much y'all have a nice day your honors you're welcome